IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN ALAN ALBERTS,

    Petitioner,                      No. CIV-S-03-0049 MCE KJM P

    vs.

A.A. LAMARQUE,

    Respondent.                   <u>FINDINGS AND RECOMMENDATIONS</u>

                              /

Petitioner is a state prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted in the Superior Court of Sacramento County of: 1) robbery occurring in a residence; 2) possession of a firearm by a felon; and 3) possession of ammunition by a felon. The jury also found the petitioner used a firearm in the commission of a robbery. Petitioner is serving a total of 27 years' incarceration in the California Department of Corrections for these offenses.

I. <u>Background</u>

The parties agree that the following summary accurately reflects the facts presented at petitioner's trial:

> Late one April evening in 1998, while Ricky Paoli was watching television and getting ready for bed, Mr. Alberts, a former roommate, knocked on his door. (RT 46, 82.) Mr. Paoli opened

|    |    |
|----|----|
| 1  | the door and invited Mr. Alberts into the house. (RT 48-49.) Mr. Alberts retrieved a sawed-off shotgun wrapped in a blanket that he had left outside Mr. Paoli's house, and entered. (RT 49.) Mr. Paoli asked why Mr. Alberts needed the shotgun, and Mr. Alberts replied that he did not want to leave it outside for fear that it would be stolen. (RT 51.) Mr. Alberts broke open the shotgun and showed Mr. Paoli the shells. (RT 87-88.) They chatted for a while and smoked some marijuana. (RT 52.) About an hour later, Mr. Alberts gathered his shotgun and left. (RT 57.) Mr. Paoli then went to bed. (RT 58.) |

the door and invited Mr. Alberts into the house. (RT 48-49.) Mr. Alberts retrieved a sawed-off shotgun wrapped in a blanket that he had left outside Mr. Paoli's house, and entered. (RT 49.) Mr. Paoli asked why Mr. Alberts needed the shotgun, and Mr. Alberts replied that he did not want to leave it outside for fear that it would be stolen. (RT 51.) Mr. Alberts broke open the shotgun and showed Mr. Paoli the shells. (RT 87-88.) They chatted for a while and smoked some marijuana. (RT 52.) About an hour later, Mr. Alberts gathered his shotgun and left. (RT 57.) Mr. Paoli then went to bed. (RT 58.)

Early the next morning, Mr. Paoli was awakened by Mr. Alberts pounding on his bedroom window. (RT 58.) Mr. Paoli went to his front door and opened it. (RT 60.) Mr. Alberts, carrying his shotgun, pushed his way past Mr. Paoli into the house. (RT 60.) Mr. Alberts said that because Mr. Paoli owed him money, he would take Mr. Paoli's stereo. (RT 63.) Mr. Alberts then hit Mr. Paoli in the head with the shotgun. (RT 63.) Mr. Paoli fell to the floor. Mr. Alberts pointed the shotgun at him, told him not to get up, and took his money. (RT 65, 69.) He then took Mr. Paoli's stereo and speakers. (RT 69-70.)

After Mr. Alberts carried the stereo outside, he came back and pulled or took Mr. Paoli's telephone cord out of the wall. (RT 72, 171.) He told Mr. Paoli that if he told anyone, he would come back and there would be trouble. (RT 73.)

After Mr. Alberts left, Mr. Paoli went next door to use the telephone. (RT 73.) He told his neighbor that he had been robbed and hit with a shotgun. (RT 119.) The neighbor dialed 911 for Mr. Paoli and handed him the phone. (RT 119.)

Two days later, Mr. Alberts was detained by the police because he had driven his car up on the sidewalk. (RT 177-78.) The investigating officers learned that Mr. Alberts matched the general description of the person who robbed Mr. Paoli. (RT 180.) They determined that Mr. Alberts was staying in an apartment nearby [belonging to Sarah Nevel]. (RT 191.) Even though the owner of the apartment told the police they could not search her home, they did so anyway and found Mr. Paoli's stereo. (RT 191, 229.) In addition, the police found shotgun shells along with men's clothing and other items in a black duffel bag in a bedroom in the apartment. (RT 205-06.)

Answer at 5:4-22; see also Traverse at 1:2.

After petitioner's jury trial, petitioner appealed his convictions and sentences to the California Court of Appeal. The Court of Appeal, based on People v. Wende, 25 Cal. 3d 436 (1979), found there were no meritorious issues for appeal and affirmed petitioner's convictions

and sentences. Answer, Ex. 3. Petitioner sought review of the Court of Appeal's decision in the California Supreme Court. Petitioner's request for review was denied without comment. Id., Ex. 5. After direct review, petitioner filed requests for collateral relief at all three levels of California's courts; all of those requests were denied. Id., Exs. 6-13.

II. Standards For Granting Habeas Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1] Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground

---

[1] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

1 that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v.
2 Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district
3 courts to review state court decisions for error before determining whether relief is precluded by
4 § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief
5 by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

6       The "contrary to" and "unreasonable application" clauses of § 2254(d)(1)  are
7 different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the governing
> law set forth in our cases, or if it decides a case differently than we
> have done on a set of materially indistinguishable facts.  The court
> may grant relief under the "unreasonable application" clause if the
> state court correctly identifies the governing legal principle from
> our decisions but unreasonably applies it to the facts of the
> particular case.  The focus of the latter inquiry is on whether the
> state court's application of clearly established federal law is
> objectively unreasonable, and we stressed in Williams [v. Taylor,
> 529 U.S. 362 (2000)] that an unreasonable application is different
> from an incorrect one.

15 Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the
16 law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply
17 fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8
18 (2002).

19       The court will look to the last reasoned state court decision in determining
20 whether the law applied to a particular claim by the state courts was contrary to the law set forth
21 in the cases of the United States Supreme Court or whether an unreasonable application of such
22 law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.
23 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial
24 of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court
25 must perform an independent review of the record to ascertain whether the state court decision
26 was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

4

words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

III. Arguments and Analysis

A. Ineffective Assistance of Counsel

Petitioner asserts his trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment. Am. Pet. at 6. The Supreme Court has enunciated the standards for judging ineffective assistance of counsel claims. See Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-18 (9th Cir. 1984) (per curiam).

1. Motion To Suppress

Petitioner claims trial counsel should have filed a motion to suppress evidence, but fails to assert anything in support of this claim in his habeas application. Am. Pet. at 6. In his traverse petitioner claims that a motion to suppress should have challenged his being stopped by police officers, as well as the search of Sarah Nevel's apartment, as improper. Traverse at

1-7. These claims were presented to the California Supreme Court, Answer, Ex. 12 at 4, 9-16, which denied the claims without comment. Id., Ex. 13; see also id., Ex. 7 at 2 (superior court's denial of claim with explanation).

The state court's denial of petitioner's claims does not reflect an objectively unreasonable application of federal law. With respect to the reason why petitioner was stopped, a police officer testified that he approached petitioner because he was sitting inside a car that was parked on the sidewalk. RT 177:16-26.[2] When the officer asked petitioner why he was parked on the sidewalk, petitioner told the officer that he pulled up on to the sidewalk because his driver's license had been suspended. RT 179:9-13.[3] Petitioner subsequently was detained. RT 179:14-16. Because petitioner himself admitted he had broken the law, he was not arrested unreasonably in violation of the Fourth Amendment. See Allen v. City of Portland, 73 F.3d 232, 236-37 (9th Cir. 1995) (warrantless arrest may occur if police officer has probable cause to believe the person to be arrested has committed a crime).

Petitioner claims police officers should not have searched the apartment of Sarah Nevel without a search warrant. The apartment was searched on April 22, 1998. RT 228:23-229:5. Nevel testified that, at the time, she was petitioner's girlfriend. RT 211:13-24. Around the time petitioner was arrested on April 22, 1998, petitioner had spent two evenings with Nevel. RT 212:15-24. When asked whether petitioner spent the night with Nevel on April 21, 1998, Nevel responded "[Y]eah. I think he might have." RT 219:8-21. However, petitioner presents evidence in his traverse that indicates he stayed with Ellen Smith the night before he was arrested. Traverse, Ex. A at 1-2. Petitioner did not live with Nevel around April 22, 1998. RT 215:24-216:8; Traverse at 4:14-17.

/////

---

[2] The transcript is attached as Exhibits 16 and 17 to the Answer.

[3] Petitioner does not deny that he informed the police he had been driving on a suspended license.

Based on the evidence presented, petitioner has not shown he has standing to challenge the search that occurred at Sarah Nevel's on April 22, 1998. The Supreme Court has held the proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search. Rakas v. Illinois, 439 U.S. 128, 131 n.1 (1978). The evidence before the court indicates petitioner did not live with Sarah Nevel, and that he was not a guest in her apartment at the time it was searched. Under these facts, petitioner has not shown he would have had standing to assert a violation of his Fourth Amendment rights at trial, or that he has standing now. See Rakas at 134 ("A person who is aggrieved by an illegal search . . . of a third person's premises . . . has not had any of his Fourth Amendment rights infringed.").

For these reasons, trial counsel's failure to contest petitioner's arrest, the search of Sarah Nevel's apartment, or any of the evidence discovered as a result of these events was not objectively unreasonable.

### 2. Failure To Call Witnesses

Petitioner also claims trial counsel was ineffective for failing to call any defense or "mitigating" witnesses, except for one. Am. Pet. at 6. Petitioner presented this claim to the California Supreme Court in an application for collateral relief. Answer, Ex. 12 at 11. The claim was denied without comment. Id., Ex. 13. As before the California Supreme Court, petitioner fails to specifically identify any testimony that counsel should have elicited. Accordingly, the California Supreme Court's rejection of this claim does not reflect an unreasonable application of federal law as petitioner has not shown that counsel prejudiced his case by failing to call any particular witness.[4] Strickland, 466 U.S. at 693-94; James v. Borg 24 F.3d 20, 26 (9th Cir. 1994).

---

[4] With his traverse, petitioner presents two "investigation reports" from an investigator who spoke with Sarah Nevel and Ellen Smith before trial. Traverse, Exs. A & B. As noted above Sarah Nevel was called as a witness at trial. Petitioner fails to present anything suggesting Ellen Smith should have been called.

### 3. Failure To Interview Prosecution Witnesses

Additionally, petitioner initially asserted trial counsel should have interviewed the prosecution's witnesses, Am. Pet at 6, but he withdraws this claim in his traverse. Traverse at 8:4-6.

### 4. Failure To Help Petitioner Withdraw Prior Plea Agreement / Failure To Raise Claim That Prior Felonies Are Unconstitutional For Enhancement

Finally, petitioner claims trial counsel should have asked that his 1993 conviction for residential burglary not be used to enhance petitioner's sentence and that counsel should have moved to withdraw the plea agreement associated with the 1993 conviction. Am. Pet at 6.

Although these claims were not presented to the California Supreme Court, meaning petitioner is precluded from obtaining relief under 28 U.S.C. § 2254(b)(1), the claims are not colorable and for this reason also should be denied. See Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005) (court may reject unexhausted claim if it is perfectly clear the claim is not colorable); Beaudry Motor Co. v. Abko Properties, Inc., 780 F.2d 751, 756 (9th Cir. 1986) (a colorable claim is one with both legal and factual support).

There is no merit to the claim that use of the 1993 conviction creates an ex post facto problem. See pages 13-14 infra. To the extent petitioner suggests that using the 1993 conviction to enhance his current sentence creates a double jeopardy problem, this argument has been flatly rejected. See Witte v. United States, 515 U.S. 389, 399-400 (1995).

Concerning whether counsel should have moved to withdraw the 1993 plea, petitioner has not provided anything to suggest that any party to the agreement breached a term of the agreement. Petitioner vaguely asserts in his traverse that he should be allowed to withdraw the agreement because, at the time he entered into the agreement, petitioner was not aware that the law could change concerning how the 1993 conviction might affect a later sentence. Traverse at 8. The law did in fact change after entry of the conviction with the passage of California's "Three Strikes Law" in 1994. See Cal Penal Code § 667. Petitioner asserts that if he had been

aware the law could change and that something such as the "Three Strikes Law" could have been enacted, he would not have pled guilty. Traverse at 8. The Due Process Clause of the United States Constitution requires only that a guilty plea be both voluntary and intelligent at the time it is taken. Boykin v. Alabama, 395 U.S. 238, 242 (1969). There is no legal authority to support the proposition that a defendant pleading guilty must be informed how the resulting conviction might be used to enhance a future sentence associated with a future crime with which defendant has not yet been charged, or that the law with respect to how the conviction could be used to enhance a future sentence might change. See United States v. Brownlie, 915 F.2d 527, 528 (9th Cir. 1990) (defendant need only be informed of direct consequences of plea; the possibility that the defendant will be convicted of another offense in the future and will receive an enhanced sentence is not a direct consequence).

For these reasons, trial counsel was not objectively unreasonable in failing to argue that using petitioner's 1993 conviction to enhance his current sentence is improper, or for failing to move to withdraw the 1993 plea.

### B. Ineffective Assistance of Appellate Counsel

Petitioner claims his counsel on appeal was ineffective for failing to assert any arguments on petitioner's behalf, but fails in his application to identify which claims should have been raised. Am Pet. at 6. He identifies various claims in his traverse, discussed below.

#### 1. Other Claims Asserted Herein

Petitioner asserts appellate counsel was ineffective for failing to raise all of the ineffective assistance of trial counsel claims reviewed above. Traverse at 9:11-15. Because none of these claims have merit, appellate counsel was not ineffective for failing to raise them. See United States v. Moore, 921 F.2d 207, 210 (9th Cir. 1990) (no prejudice under Strickland where counsel fails to raise meritless claim).

/////

/////

### 2. Request To Proceed Pro Se At Sentencing

Petitioner also claims that a request he made to proceed pro se near the end of his sentencing hearing should have been granted and appellate counsel was ineffective for failing to argue as much on direct appeal. Traverse at 10:27-11:17. This claim was presented to the California Supreme Court on direct appeal, Answer, Ex. 4 at 13, and was denied without comment. Id., Ex. 5.

Denial of the claim was not based on an objectively unreasonable application of federal law. The trial court denied petitioner's request to represent himself as untimely. RT 313:1-315:3. While it appears neither the Ninth Circuit nor the Supreme Court has decided when a motion to proceed pro se with respect to sentencing proceedings must be made, the Ninth Circuit has held that with respect to trial proceedings, such a motion is presumptively not timely if it is made after the jury is empaneled. Cf. Armant v. Marquez, 772 F.2d 552, 555 (9th Cir. 1985). In light of Armant, it was reasonable and consistent with federal law for the California Supreme Court to find that a request to proceed pro se at sentencing made near the end of the sentencing proceeding could be denied as untimely.

### 3. California Penal Code § 654

Petitioner claims that appellate counsel should have argued that petitioner's sentence violates California Penal Code § 654[5] because certain facts underlie more than one

---

[5] California Penal Code § 654 reads as follows:

> (a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.
>
> (b) Notwithstanding subdivision (a), a defendant sentenced pursuant to subdivision (a) shall not be granted probation if any of the provisions that would otherwise apply to the defendant prohibits the granting of probation.

1  sentence comprising petitioner's aggregate 27 year sentence.  Traverse at 12:2-20.  This claim
2  was presented to the California Supreme Court on direct appeal, Answer, Ex. 4 at 14, and was
3  denied without comment.  Id., Ex. 5.  Petitioner has not shown that the rejection of petitioner's
4  claim reflects an objectively unreasonable application of federal law.  As with petitioner's claim
5  before the California Supreme Court, petitioner fails to identify which facts provide the basis for
6  two or more sentences.  Petitioner's claim should be rejected.  See James, 24 F.3d at 26
7  (conclusory allegations not supported by statement of specific facts do not warrant habeas relief).

        4.  Prosecutorial Misconduct

Petitioner also claims appellate counsel was ineffective for failing to assert that the prosecution made inappropriate and prejudicial comments to the jury.  Traverse at 12-13. Petitioner claims his case was prejudiced because the prosecution:  (1) referred to a defense witness as a liar, and (2) referred to petitioner as an "animal."  Petitioner presented part (1) of his claim to the California Supreme Court, Answer, Ex. 4 at 14, and the claim was denied without comment.  Id., Ex. 5.  It does not appear that part (2) was presented to the California Supreme Court.

With respect to part (1), the California Supreme Court's rejection of petitioner's claim does not reflect an objectively unreasonable application of federal law.  A violation of the Due Process Clause of the Fourteenth Amendment occurs if a comment made by the prosecution "infect[s] the trial with unfairness."  See Donnelly v. DeChristoforo, 416 U.S. 637, 644 (1974).

During closing, the prosecution indicated to the jury that certain aspects of Sarah Nevel's testimony were inconsistent.  The prosecution then suggested to jurors that Ms. Nevel was lying.  RT 238.  Labeling a witness a liar, or his or her testimony as lies, is not necessarily unfair.  See, e.g., United States v. Sarno, 73 F.3d 1470, 1496-97 (9th Cir. 1995).  Petitioner fails to argue that Ms. Nevel's testimony was not worthy of being questioned by the prosecution, nor does he in any other way present anything suggesting that the prosecutor's comment rendered petitioner's trial unfair.  See James, 24 F.3d at 26.

11

If petitioner did not exhaust state court remedies with respect to part (2), he is precluded from obtaining relief as to this claim under 28 U.S.C. § 2254(b)(1). Even if the court were to reach this aspect of his claim, it should be denied as not colorable. See Cassett, 406 F.3d at 623-24; Beaudry Motor Co., 780 F.2d at 756.

In Darden v. Wainwright, 477 U.S. 168, 182 (1986) the prosecution referred to the defendant as an "animal" during closing. The court found that the defendant's right to due process was not violated considering: (1) the prosecution's argument did not manipulate or misstate the evidence; (2) it did not implicate other specific rights of the accused such as the right to counsel or the right to remain silent; (3) the comments were invited by the defendant's opening statement; (4) the trial court instructed the court that the prosecution's statement could not be considered as evidence; and (5) the evidence against the defendant was substantial. Id.

In this case, the prosecution's "animal" comment arose as follows:

> You saw how hard it was for Mr. Paoli to identify Mr. Alberts in this courtroom. Why? Not because he didn't recognize him. Not because he wasn't sure. But because he was absolutely terrified of this animal. That's the only reason that Mr. Paoli had a difficult time identifying Mr. Alberts in front of you.

RT 253:3-8.

In the context of the record as a whole, this comment did not manipulate or misstate the evidence or implicate any of petitioner's other Constitutional rights. Moreover, the court instructed jurors not to consider the statements of counsel as evidence, RT at 261:8-9, and the evidence against defendant was substantial. See pages 1-2 supra. Petitioner's claim that he was prejudiced by the prosecution's "animal" comment is unsupported.

### 5. Transcript

While it is not entirely clear, it appears petitioner argues that appellate counsel was ineffective for failing to have the opening statements made at trial transcribed. Traverse at 13. This claim was presented to the California Supreme Court on direct appeal, Answer, Ex. 4 at 14, and denied without comment. Id., Ex. 5. The denial of this claim does not reflect an

objectively unreasonable application of federal law as petitioner fails to provide any detail as to how the failure to have the opening statements transcribed prejudiced his appeal.

### C. Allocution

Petitioner claims that, at sentencing, the trial judge failed to give petitioner an opportunity to speak in order to present information that might result in a decreased sentence. Am. Pet at 7. This claim is not cognizable as there is no constitutional right of allocution. Hill v. United States, 368 U.S. 424, 471 (1962).

### D. Ex Post Facto / Breach of Plea Agreement

Petitioner asserts that a conviction for burglary sustained by petitioner prior to the enactment of California's "Three Strikes Law" should not have been used to increase petitioner's sentence under that law. He also claims the use of the prior burglary conviction to enhance petitioner's sentence violated the plea agreement entered for the prior burglary conviction. Am. Pet. at 7.

Petitioner presented his ex post facto claim on collateral review to the Superior Court of Sacramento County and the California Supreme Court. Answer, Ex. 8 at 3 & Ex. 12 at 6. The only court to issue a reasoned decision with respect to this claim was the Superior Court of Sacramento County, which analyzed petitioner's claim as follows:

> The fact that the prior conviction occurred before the enactment of the Three Strikes law does not violate the ex post facto provisions of the federal and state constitutions. "Three Strikes" does not increase the punishment for prior offenses; rather it imposes an increased punishment for a current offense when the defendant has prior serious or violent felony convictions. Thus, ex post facto principles are not violated. [Citations omitted.]

Id., Ex. 9 at 2.

Petitioner has not shown that the state court's adjudication of petitioner's claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

13

presented to the state court. Furthermore, as noted by respondent in his answer, the Ninth Circuit has found that as long as a sentence enhancement statute is in effect at the time of the triggering offense, it is not an ex post facto violation to allow a sentence to be enhanced under that statute by using an offense committed before enactment. See, e.g., United States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir. 1989).

It does not appear that petitioner presented his breach of plea agreement claim to the California Supreme Court. Therefore, petitioner is precluded from obtaining relief as to this claim under 28 U.S.C. § 2254(b)(1). In any case, the court will recommend denial of petitioner's claim because he fails to present any facts indicating the manner in which any party to the agreement breached it. See Cassett, 406 F.3d at 623-24; Beaudry Motor Co., 780 F.2d at 756.[6]

IV. Conclusion

For all of the foregoing reasons, the court will recommend that petitioner's application for writ of habeas corpus be denied.

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

/////

/////

---

[6] In his traverse, petitioner also claims that the application of the "Three Strikes Law" to convictions incurred before its enactment violates constitutional due process provisions. Traverse at 17. Petitioner did not assert a denial of due process claim with respect to his sentence in his habeas application. Because it is not appropriate to raise new claims in a traverse, Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), the court declines to reach this claim.

shall be served and filed within five days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 15, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

1
albe0049.157